COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: March 17, 2026
Final Report: July 2, 2026

John G. Day, Esquire
Caneel Radinson-Blasucci, Esquire
Prickett, Jones & Elliot, P.A.
1310 N. King Street
Wilmington, DE 19801

David L. Finger, Esquire
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801

RE:  *Yanan Sun v. Wei Ming Chang, et al.,*
C.A. No. 2025-1228-LM

Dear Counsel,

This action concerns the composition of the board of directors of Marbella Delaware.  Plaintiff Yanan Sun and Defendant Wei Ming Chang are the Company's co-founders, stockholders, and directors.  Their personal and business relationships deteriorated, giving rise to a broader dispute concerning the control of the Company. At the center of that dispute is Yong Song, a business associate of the Company who has been appointed as the Company's third director.

Sun contends that Song was validly appointed to Marbella Delaware's board through corporate actions taken in 2023 and later reaffirmed in 2024. Chang disagrees.  He argues that the steps taken to appoint Song failed to satisfy Delaware

law and the Corporation's governing documents. Chang further argues that Song's appointment arose from a relationship between Sun and Song, which Sun allegedly failed to disclose before the parties executed the relevant agreements. Sun commenced this action pursuant to Sections 205 and 225 of the Delaware General Corporation Law ("DGCL"), seeking a declaration that Song was validly appointed as a director of Marbella Delaware.

The Court concludes that Song was validly appointed as a director of Marbella Delaware. The record demonstrates that Chang and Sun agreed to add Song to the board, executed the relevant documents implementing that decision, and subsequently treated Song as a director. Chang failed to establish that any alleged nondisclosure rendered the challenged corporate actions invalid. Accordingly, judgment is entered in Sun's favor.

This is my Final Report.

## I. FACTUAL BACKGROUND

### A. Marbella Delaware and Its Founders

The parties operate a vacation-rental management business serving property owners primarily in California, Washington, Colorado, and Hawaii.[1] They operate several entities under the name Marbella Lane. Wei Ming Chang ("Defendant") and

---

[1] Docket Item ("D.I.") 1 at 2–3; D.I. 48 at 3.

Yanan Sun ("Plaintiff") founded the business together in 2018 when they were married, and spent several years building it into a growing property-management platform.[2]

In 2022, Plaintiff and Defendant reorganized Marbella Lane's corporate structure (the "Restructuring").[3] As part of the Restructuring, they formed Marbella Lane Holdings, Inc. and Marbella Lane (DE), Inc. (collectively, "Marbella Delaware" or the "Company").[4] Plaintiff and Defendant are the sole stockholders of Marbella Lane Holdings, Inc. each holding a fifty-percent ownership interest.[5] Marbella Lane Holdings, Inc. wholly owns Marbella Lane (DE), Inc., which serves as the sole member of Marbella Lane LLC, the principal operating entity through which Marbella Lane conducts its business in California.[6] Although Marbella Lane operates through multiple affiliated entities, this dispute concerns Marbella Delaware because it is the entity whose board of directors allegedly appointed Song and whose corporate governance is at issue in this action.

---

[2] D.I. 48 at 3.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

Although Chang and Sun were married, their personal relationship deteriorated, and they have been separated since November 2022.[7] Their separation did not immediately alter the Company's governance structure or day-to-day operations. Instead, both founders continued participating in management while attempting to grow the business and address their ongoing financial challenges. As Marbella Delaware's need for capital and stability increased, so too did its reliance on Yong Song, one of the Company's property-owner clients, and an investor.[8]

## B.    Song's Expanding Role in the Business

Song became increasingly important to Marbella Delaware during 2022 and 2023.[9] He owned multiple properties managed through the Marbella Delaware platform.[10] Marbella Delaware also depended on Song for financial support.[11] Between late 2022 and early 2024, Song loaned substantial sums to the business while it navigated periods of financial strain.[12] By 2023, Song communicated regularly with Plaintiff and Defendant regarding Marbella Delaware's operations, personnel matters, and initiatives.[13] As Marbella Delaware's financial pressures

---

[7]  D.I. 48 at 8.

[8]  *Id.* at 3–4.

[9]  *Id*. at 4, 6–7.

[10]  D.I. 1 at 5–6.

[11]  D.I. 63 at 8–9.

[12]  D.I. 49 at 4–5.

[13]  D.I. 48 at 6–8; D.I. 63 at 9–10.

persisted and disagreements between the founders increased, Plaintiff and Defendant began discussing a more formal role for Song within the Company.[14] By Spring of 2023, both founders viewed Song as someone capable of contributing to Marbella Delaware beyond the role of customer and lender.[15]

## C.    The Parties' Decision to Formalize Song's Role

In May 2023, a human resources contractor retained by the Company recommended, amongst other things, to have a third person added as a director in an effort to resolve some of the business conflicts between the parties.[16] The parties agreed that Song would be the third party to assist the Company.[17]

In June 2023, documents were circulated formalizing Song's anticipated relationship with Marbella Delaware, including materials relating to his proposed appointment to the Board and a contemplated 10% equity grant.[18] The grant was conditioned on a Section 409A valuation because Company counsel advised that such a valuation was necessary to ensure the options were granted at fair market value.[19]  Defendant acknowledged signing the Director Agreement ("Director

---

[14]  *See* Trial Tr. at 11–12 (Sun) ("And at that time [May 2023], because of the conflicts Willy and I had, the company cannot run properly."); JX 6.0006–.0024.

[15]  *See* Trial Tr. at 9–11; JX 6.0006.

[16]  *See* Trial Tr. at 10; JX 5.

[17]  *See* Trial Tr. at 10; JX 5.

[18]  *See* JX 6.0004; D.I. 48 at 3–4.

[19]  *See* JX 6.0002.

Agreement" or "Agreement") and the written-consent materials relating to Song's appointment. Defendant did not dispute that counsel prepared and circulated documents to implement that Agreement. Subsequently, the parties continued to discuss the terms of that grant through late 2023 and into early 2024, including Song's request that the options be issued in his son's name.[20] Counsel later circulated an updated Director Agreement reflecting those discussions.[21]

### D. Marbella Delaware's Documents Concerning the Board of Directors

Marbella Delaware's Bylaws (the "Bylaws") authorized stockholders to elect directors, act by written consent, and fill newly created directorships. For the purposes of the analysis, several provisions are relevant to Song's purported appointment.

i. Section 8(a) of the Bylaws defines "Requisite Holders" as Plaintiff and Defendant.[22]

ii. Section 8(b) of the Bylaws provides:

"Except as otherwise provided by statute, the Certificate of Incorporation or these Bylaws, directors will be elected by a plurality of the votes of the shares present in person, by remote communication, if applicable, or represented by proxy duly authorized at the meeting and entitled to vote generally on the

---

[20] JX 61.0001–.0018.

[21] *Id.*

[22] *See* JX 14.0005.

election of directors, which must at all times include the affirmative vote of the Requisite Holders."[23]

iii. Section 13(a) of the Bylaws provides:

> Unless otherwise provided in the Certificate of Incorporation, any action required by statute to be taken at any annual or special meeting of the stockholders, or any action that may be taken at any annual or special meeting of the stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents setting forth the action so taken, will be signed the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.[24]

iv. Section 15 of the Bylaws provides: "The authorized number of directors of the corporation will be fixed by the Board of Directors from time to time."[25]

v. Section 18(a) of the Bylaws provides:

> "any vacancies on the Board of Directors resulting from . . . any newly created directorships resulting from any increase in the number of directors will, unless the Board of Directors determines by resolution that any such vacancies or newly created directorships will be filled by stockholders, be filled only by the affirmative vote of a majority of the directors then in office."[26]

These provisions supplied the framework through which Marbella Delaware could add a third director to its board. In particular, the Bylaws authorized

---

[23] JX 14.0005.

[24] JX 14.0007.

[25] JX 14.0008.

[26] JX 14.0009.

7

stockholders to act by Written Consent ("Written Consent") and established the procedures for filling newly created directorships.

## E. The Relationship Unravels

Although separated since 2022, the parties continued working together after the execution of the June 2023 documents.[27] During that period, Song remained involved in Marbella Delaware's affairs. The present dispute emerged after the founders' personal and business relationships deteriorated in 2024. In October 2024, Defendant engaged a family law attorney to initiate divorce proceedings, and disagreements concerning the Company control became intertwined with disputes arising from the separation.[28]

Although Song had been serving as a director, Marbella's counsel was unable to locate the executed 2023 Written Consent memorializing his appointment.[29] When counsel attempted to cure the missing paperwork by preparing a replacement consent, Defendant refused to execute it.[30] Shortly thereafter, at the October 29 Board meeting, Defendant—accompanied by separate counsel—took the position for the first time that Song had not been validly appointed to the Board.[31]

---

[27] D.I. 48 at 8.

[28] D.I. 63 at 9.

[29] *Id*. at 9.

[30] *Id*.

[31] D.I. 63 at 9.

The conflict intensified after Defendant initiated divorce proceedings in California on January 6, 2025.[32] Within months, Defendant expanded the dispute to a separate California lawsuit against Plaintiff and Song, alleging fiduciary misconduct and conversion, seeking restitution, an accounting, and declaratory relief.[33] Defendant eventually took the position that Song had never been validly appointed as a director and had no enforceable right to equity compensation.

Sun commenced this action shortly thereafter seeking declarations concerning Song's status as a director and the validity of the challenged corporate actions.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on October 24, 2025.[34] The Complaint asserts three counts seeking: (i) a determination under 8 Del. C. § 225 that Song is a director of Marbella Delaware; (ii) alternatively, validation under 8 Del. C. § 205 of Song's appointment as a director; and (iii) a declaration under 8 Del. C. § 205 regarding Song's right to acquire Marbella Delaware stock under the alleged Option Grant. Trial was held on March 17, 2026, after which the matter was taken under advisement.[35]

---

[32]  *Id*.

[33]  *Id*. at 9–10.

[34]  *See* D.I. 1.

[35]  *See* D.I. 68.

### III. ANALYSIS

For the purposes of the analysis, the Court is mindful that portions of the testimony and briefing addressed the nature of the personal relationship between Plaintiff and Mr. Song and whether that relationship became romantic, when it allegedly began, and the extent to which it affected interactions among the parties. While the Court acknowledges that those matters are significant to the parties, personally, and may bear on disputes being litigated in other forums, they are not the true questions presented here. This proceeding arises under Sections 205 and 225 of the DGCL and concerns a narrow issue: whether Marbella Delaware validly appointed Song as a director under its governing documents and Delaware law.

The Court declines to undertake a broader examination of the parties' intimate relationships or to resolve competing factual narratives concerning their personal lives except to the extent necessary to address the legal issues properly before it. The Court's analysis focuses on objective evidence of corporate action, including the governing documents, the written consents, the Director Agreement, and contemporaneous conduct. With those principles in mind, the Court reviewed the record to determine whether Song validly holds office as a director.

#### A. Legal Standard

The DGCL Code Title 8 §225(a), empowers the Court of Chancery, "upon application of any stockholder or director…[to] hear and determine the validity of

any election, appointment, removal or resignation of any director or officer of any corporation."[36]   In a §225 proceeding, the plaintiff bears the burden of proving entitlement to relief by a preponderance of the evidence.[37]

A §225 action is a summary proceeding limited to issues that pertain to the validity of corporate actions to elect or remove a director or officer.[38]   The Court's inquiry is confined to resolving disputes over who rightfully holds corporate office and does not extend to collateral issues unrelated to the validity of the election or appointment at issue.[39]   The Court focuses on whether the corporate *acts* at issue complied with the Corporation's governing documents and Delaware law.

To resolve this dispute, the Court examines the governing documents, the Certificate of Incorporation and Bylaws, using traditional principles of contract interpretation.[40]   If the terms are clear and unambiguous, the Court will give effect to its plain meaning.[41]   The Court construes the instrument as a whole, giving effect

---

[36]  *See* 8 Del. C. §225(a).

[37]  *See In re IAC/InterActive Corp.*, 948 A.2d 471, 493 (Del. Ch. 2008).

[38]  *See Genger v. TR Invs., LLC*, 26 A.3d 180, 199 (Del. 2011).

[39]  *See id.*

[40]  *See Matulich v. Aegis Commc'ns Grp., Inc.*, 942 A.2d 596, 600 (Del. 2008).

[41]  *See Sanders v. Wang*, 1999 WL 1044880, at *6 (Del. Ch. Nov. 8, 1999).

to all provisions and seeking to ascertain the parties' intent from the four corners of the document.[42]

Similarly, the DGCL provides that "the business and affairs of every corporation organized shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation."[43] "[U]nless otherwise provided in the certificate of incorporation or bylaws, vacancies and newly created directorships . . . may be filled by a majority of the directors then in office."[44] A board of directors can take action at a meeting or through unanimous action by written consent without a meeting.[45]

Finally, when determining the validity of a challenged corporate act, the Court may consider not only the formal corporate instruments themselves but also the parties' contemporaneous and subsequent conduct insofar as that conduct sheds light on their understanding of, assent to, and implementation of the challenged action.[46]

---

[42] *See GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).

[43] *See* 8 Del. C. §141(a).

[44] 8 Del. C. §223(a)(1).

[45] *See* 8 Del. C. §141(b); see *also* 8 Del. C. §141(f).

[46] *See Matulich*, 942 A.2d at 600.

## B. Defendant Has Not Established a Basis to Invalidate the Director Agreement

Plaintiff contends the Director Agreement validly appointed Song to Marbella Delaware's board of directors and remains enforceable.[47] Defendant argues the Director Agreement is void because Plaintiff allegedly failed to disclose an intimate relationship with Song before execution and further contends that Song's appointment diminished Defendant's influence during a period of turmoil.[48] According to Defendant, had he known the nature of Plaintiff's relationship with Song and the extent of Song's alleged lack of neutrality, he would not have executed the Director Agreement.[49] Defendant advances a fiduciary duty to disclose theory based on marital and corporate roles, maintaining that Plaintiff, as both a director and his spouse, owed a fiduciary duty to disclose the relationship before execution of the agreement.[50]

§ 225 concerns the validity of the challenged corporate act. It is not a vehicle to litigate every grievance that may exist between the parties.[51] "A Section 225 action is an improper vehicle for trying purely collateral issues, issues of director

---

[47] S*ee* D.I. 48 at 12.

[48] *See* D.I. 49 at 11.

[49] *See id.* at 11–12.

[50] *See id.*

[51] *See Genger*, 26 A.3d at 199.

misconduct or other breaches of fiduciary duty. A claim is 'purely collateral' if resolution of the claim does not help the Court decide the proper composition of the board of directors or management team or the validity of a stockholder vote."[52] Accordingly, the *primary* inquiry is whether Marbella Delaware validly appointed Song as a director consistent with corporate law and corporate formalities.

Defendant identifies no Delaware authority holding that failure to disclose a personal or romantic relationship renders an otherwise valid director appointment void. Nor has Defendant identified any provision of Marbella Delaware's governing documents or the Director Agreement requiring disclosure of such a fiduciary relationship as a condition precedent to Song's appointment. Defendant's own authorities confirm the limits of his argument. Defendant relies on *Gaffin v. Teledyne, Inc.* for elements of equitable fraud and *In re Wayport, Inc. Litigation* regarding the need for a special relationship, but even assuming a special relationship, Defendant must prove a material omission, justifiable reliance, causation, and an appropriate remedy for the resulting damages.[53] He did not.

The alleged omission was not made a representation, warranty, or condition of Song's appointment in the governing documents or the Director Agreement.

---

[52] *Nazarian v. Sassouni*, 2025 WL 1913182, at *7 (Del. Ch. July 11, 2025) (internal citations omitted).

[53] 611 A.2d 467 (Del. 1992); 76 A.3d 296, 327 (Del. Ch. 2013).

Defendant identifies no provision of the Director Agreement, the certificate of incorporation, the bylaws, or the DGCL that conditioned Song's appointment on disclosure of Plaintiff's personal relationship with Song. Without that link, on this record, the alleged omission does not establish that the corporate act itself was invalid.

Defendant's marital fiduciary-duty authorities are also distinguishable. Defendant in his briefs cites *Angelli v. Sherway*, *Peyton v. William C. Peyton Corp.*, and California Family Code § 721 to argue that Plaintiff owed duties to Defendant as a spouse.[54] Those authorities may speak to duties between spouses in an appropriate domestic-relations or fiduciary-duty case. However, they do not hold that an alleged failure to disclose a personal relationship automatically voids a Delaware corporate appointment. Whatever claims Defendant may wish to pursue arising from the parties' personal relationship are beyond the limited scope of this § 225 proceeding, which concerns only whether the challenged corporate act was validly taken.

"When addressing a claim to corporate office under § 225, the Court may consider whether the claim is tainted by fraud, deceit or breach of contract. But that determination may be made 'only for the purpose of determining the corporation's de jure directors and officers,' not for the purpose of assessing in personam liability

---

[54] *See* D.I 49; D.I. 65; 560 A.2d 1028 (Del. 1989); 7 A.2d 737 (Del. 1939).

for actionable wrongdoing."[55]  The Court therefore need not determine whether Plaintiff and Song in fact maintained an intimate physical relationship during the relevant period.  The dispositive question is not the nature of Plaintiff's personal relationship with Song, but whether Marbella Delaware complied with the corporate formalities necessary to appoint Song as a director.

Defendant's rescission cases are likewise distinguishable. Defendant highlights *Sabbarese v. Sabbarese*, and *Brown v. Brown*, which involved domestic agreements where concealment of adultery allegedly affected rights arising from the marital relationship itself.[56]  However, those cases do not involve the appointment of a corporate director under Delaware law.  Defendant likewise cites *Sheehan v. Hepburn*, and *Russell v. Universal Homes, Inc.*, for the general availability of equitable rescission where legal remedies are inadequate.[57]  Those cases do not relieve Defendant of proving fraud, justifiable reliance, and a defect that warrants unwinding the Director Agreement.

Even assuming that Plaintiff had a duty to disclose, the record does not establish justifiable reliance.  To prevail on a claim of equitable fraud, a party must

---

[55] *Zhou v. Deng*, 2022 WL 1024809, at *4 (Del. Ch. Apr. 6, 2022), aff'd, 287 A.3d 633 (Del. 2022).

[56] D.I 49; 146 A. 592 (N.J. Ch. 1929); 2013 WL 12180656 (Tenn. App. Sept. 12, 2013).

[57] 138 A.2d 810 (Del. Ch. 1958); 1991 WL 94357 (Del. Ch. May 23, 1991).

16

establish justifiable reliance on the alleged misrepresentation or omission.[58] Defendant suspected Plaintiff and Song maintained a relationship beyond an ordinary business association before executing the Director Agreement.[59] Defendant's own testimony reveals that he proceeded with the transaction despite concerns regarding Plaintiff's relationship with Song. Defendant has not established that the alleged omission rendered the Director Agreement invalid or otherwise affected the legal effectiveness of Song's appointment. The Court, therefore, rejects Defendant's challenge to the validity of the Director Agreement on that basis.

### C. The Record Establishes that the Director Agreement was Validly Formed

The validity of the Director Agreement also turns on whether the parties complied with the governing documents and applicable law in appointing Song to the board. Under the certificate of incorporation and Bylaws, stockholders elect directors through a vote at an annual meeting or through written consent.[60] The Bylaws provide that stockholder actions may be "taken without a meeting, without prior notice and without a vote, if a consent or consents setting forth the action so taken, will be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such

---

[58] *See Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

[59] JX 128.0001–.0002; Trial Tr. 96.

[60] *See* JX 21.0002; JX 14.0005.

action."[61]  The board can fix the number of directors and the board can fill a vacancy created by a newly created directorship.[62]

The evidence shows that the parties undertook precisely those steps.  Plaintiff and Defendant were Marbella Delaware's sole stockholders and directors at the relevant time.[63]  Defendant asked the Company counsel about adding Song to the board.[64]  Counsel responded by preparing the appropriate corporate documents designed to effectuate Song's appointment.[65]  Those documents included a Written Consent appointing Song as a director and a Director Agreement defining Song's role with the Company.[66]  The Written Consent is particularly significant because Marbella Delaware's Bylaws expressly authorized stockholders to act by Written Consent in lieu of a meeting.  Thus, if properly executed, the Written Consent constituted a legally sufficient mechanism for electing Song as a director.

The record further reflects a consistent course of conduct supporting the conclusion that Song's appointment was the product of a negotiated business arrangement and was understood by the parties as such.  The Company's finances

---

[61]  JX 14 at §13(a).

[62]  *Id.* §15, 18.

[63]  *See generally* JX 14; JX 21.

[64]  *See* JX 6.0006.

[65]  *See* JX 6.0004–.0006; JX 46.

[66]  *See* JX 28; JX 30.

depended on Song's loans;[67] internal communications identified Song as a director with a contemplated 10% equity interest and as a board member;[68] and decision making within the Corporation had reached an *impasse* between the two existing principals leading to Song's involvement to be tied to stabilizing the Company's operations.[69] This context is significant because it demonstrates that Song's appointment was not a spontaneous or unexplained corporate act. Rather, the appointment emerged from months of discussions concerning Song's growing role in the business and the founders' efforts to address operational and governance challenges.

In response to Defendant's inquiry regarding Song's holdings, Company counsel provided a capitalization promise reflecting that Song would hold a 10% ownership interest in Marbella Delaware.[70] Defendant did not object to this allocation.[71] Defendant also initiated the discussion of Song's board participation.[72] These communications reflected a record of shared understanding that Song would receive both an ownership interest and a governance role. Consistent with that

---

[67] *See* D.I. 49 at 8. Defendant states "[g]iven the company's financial condition at the time, [the Corporation] depended heavily on those loans to continue operating."

[68] *See* D.I. 48 at 4; *see also* JX 49.

[69] *See* JX 6.0006–.0024.

[70] *See* JX 48.

[71] *See* JX 49.

[72] *See* JX 6.0006.

understanding, internal Company communications identified Song as a member of the board alongside Defendant and Plaintiff.[73]

Importantly, Defendant actively participated in Song's appointment. Defendant concedes that he signed both the Director Agreement and Written Consent in June 2023.[74] Defendant identified no defect in the execution of those documents and did not contend that the Written Consent failed to satisfy the requirements of the Bylaws. Instead, Defendant's current challenge rest primarily on the assertion that he should not have agreed to Song's appointment in the first place.[75] The record reflects Defendant's approval of Song's appointment and participation in the corporate actions necessary to effectuate it. The Director Agreement and Written Consent were treated as operative corporate documents, and the record contained no contemporaneous objection to Song's appointment or status as a director. Taken together, Marbella Delaware validly exercised its authority to appoint Song as a director in June 2023.

### D. The Director Agreement was Treated as Valid and Enforceable

The record does not reflect any effort by Defendant to challenge or revoke Song's status while he acted as Director. At trial, Defendant criticized Song's

---

[73] *See* JX 55 ("The board of Marbella Lane consists of three members: Willy Chang, Yanan Sun, and [Yong] Andrew Song.").

[74] *See* JX 121.

[75] *See* D.I. 49 at 8; Trial Tr. 9–10.

attendance at board meetings, performance as a director, and alleged misconduct related to purported financial fraud.[76] However, these contentions are collateral to the limited § 225 inquiry and do not bear on whether his appointment was validly affected. Even if the Court accepted Defendant's criticisms of Song's performance, those criticisms would not establish that Song failed to become a director or ceased to be one.

An updated Director Agreement was executed by the parties effective April 2024.[77] The execution of a revised Director Agreement nearly ten months after Song's appointment is inconsistent with Defendant's current contention that Song never validly joined the board. The updated Agreement is persuasive because it was executed after months of experience working with Song in his director capacity.

Defendant and Plaintiff had been separated since November 2022, and the Director Agreement and accompanying written consents were executed during that period of separation in 2023 and 2024. To the extent Defendant relies on the alleged relationship to challenge the validity of the Director Agreement, those arguments arise from circumstances that developed *after* the execution of the Agreement and are intertwined with the subsequent deterioration of the parties' personal and professional relationship. Viewed as a whole, the post-execution record confirms

---

[76] *See* Trial Tr. 2–6.

[77] JX 69.

that the parties treated Song as a duly appointed director of Marbella Delaware, supporting the validity of the June 2023 corporate action.

### E. Alternative Relief Under Section 205

Plaintiff also seeks alternative relief under 8 Del. C. § 205. § 205 authorizes the Court to validate defective corporate acts under appropriate circumstances. Because the Court concludes that Marbella Delaware validly appointed Song as a director in the first instance, no validation is necessary under § 205, and the Court does not reach the alternative request, including the alleged Option Grant. The Court declines to reach Plaintiff's alternative § 205 claim given the § 225 determination.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Song was validly appointed as a director of Marbella Delaware. The evidence supports that the parties complied with the Corporation's governing documents to form a valid Director Agreement, treated Song as a member of the board, and that Defendant has not established grounds to invalidate the Agreement. Accordingly, the Court finds in favor of Plaintiff.

This is my Final Report. Any exceptions to this Report shall be filed within three days.

If no exceptions are taken, the Plaintiff shall submit an implementing order consistent with this decision within one week thereafter.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery